UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

LEOPOLD MILLS,

MEMORANDUM
AND ORDER
03-CV-0331 (JG)

Petitioner,

- against -

WILLIAM PHILLIPS, Superintendent,
Green Haven Correctional Facility,

Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

A P P E A R A N C E S:

>    LEOPOLD MILLS
>        No. 99A3798
>        Shawangunk Correctional Facility
>        P.O. Box 750
>        Walkill, NY 12589
>        Petitioner *Pro Se*

>    CHARLES J. HYNES
>        District Attorney
>        Kings County
>        350 Jay Street
>        Brooklyn, New York 11201-2908
>    By:    Tziyonah M. Langsam
>        Assistant District Attorney
>        Attorneys for Respondent

JOHN GLEESON, United States District Judge:

Leopold Mills petitions for a writ of habeas corpus, challenging his convictions in state court. I held oral argument on May 6, 2005. For the reasons set forth below, the petition is denied.

## BACKGROUND

The government's evidence at trial established that on November 6, 1998, at

approximately 4:40 a.m., Leopold Mills stabbed his girlfriend, Theresa Morgan, who bled to death from the wound. Mills and Morgan had been arguing in their rented bedroom in the basement of 101 East 31st Street in Brooklyn. After Morgan hit Mills in the forehead with a beer bottle, he stabbed her in the back of the thigh with a kitchen knife, severing her femoral artery. A few hours later, Mills was arrested in the backyard of a friend's house.

Mills was charged with murder in the second degree; manslaughter in the first degree; and criminal possession of a weapon in the fourth degree.

The jury found Mills guilty of manslaughter in the first degree and criminal possession of a weapon in the fourth degree. Mills was sentenced to concurrent terms of imprisonment of twenty-two years for the manslaughter conviction and one year for the weapon possession.

The day after his sentencing by Judge Leventhal on the manslaughter charge, Mills appeared before Judge Michael Pesce for sentencing on two separate charges: violation of probation (Mills had previously pleaded guilty to the attempted criminal sale of a controlled substance in the third degree, for which he received a sentence of probation); and attempted possession of a controlled substance in the fifth degree (to which Mills had also pleaded guilty, but then failed to appear for sentencing). Judge Pesce sentenced Mills to consecutive terms of imprisonment of five to fifteen years on the violation of probation, and two to four years for the drug possession. These sentences were to run consecutively with the manslaughter sentence.

Mills, through counsel, appealed to the Appellate Division, Second Department. Appellate counsel argued that Mills should receive a new trial, contending that: (1) the evidence was legally insufficient to sustain the manslaughter conviction because it failed to establish the

requisite intent; (2) the aggregate sentence resulting from the three consecutive prison terms – 22 years, 2 to 4 years, and 5 to 15 years – was excessive.

The Appellate Division affirmed Mills's conviction on September 8, 2001. *People v. Mills*, 731 N.Y.S. 2d 873 (2d Dep't 2001). The court found that (1) the evidence was legally sufficient to support a finding that Mills acted with the intent to cause serious physical injury to Morgan, thereby establishing his guilt of manslaughter in the first degree beyond a reasonable doubt; (2) the verdict was not against the weight of the evidence; (3) the sentences imposed on Mills were not excessive; and (4) Mills's remaining contentions were without merit. *Id.* The Court of Appeals denied Mills's application for leave to appeal on February 21, 2002. *People v. Mills*, 97 N.Y.2d 731 (2002) (Ciparick, J.).

On January 3, 2003, Mills filed a *pro se* petition for a writ of habeas corpus in this Court, apparently raising the following grounds: (1) the evidence at trial was legally insufficient to support his conviction; (2) his due process rights were violated; and (3) he received ineffective assistance of counsel.[1] By order dated November 17, 2003, the Court granted Mills's request to stay the habeas petition so that Mills could exhaust his ineffective assistance of counsel and due process claims in state court.

By *pro se* motion filed on January 5, 2004, Mills moved in New York Supreme Court, Kings County, to vacate his judgment of conviction pursuant to New York Criminal Procedure Law § 440.10 and to set aside his sentence pursuant to CPL § 440.20. Mills argued that his trial counsel was ineffective because he: (1) waived Mills right to testify in his defense;

---

[1] It is not entirely clear from Mills's petition what grounds he was raising. Mills subsequently clarified his arguments in correspondence with the Court, leading to the Court's November 17, 2003 order staying the petition.

(2) did not effectively challenge "uncharged crimes" testimony contradicted by the medical examiner's report; (3) did not call Mills's brother to rebut evidence about Mills's propensity for violence; (4) did not properly communicate with Mills (for example, he did not return phone calls); (5) was racially biased; (6) failed to request a circumstantial evidence charge; (7) failed to consult or advise Mills about whether to accept a plea agreement; (8) did not conduct a thorough investigation prior to trial; and (9) failed to object to the trial court's refusal to give the jury an initial aggressor instruction. Mills further argued that the trial court erred by (1) allowing in evidence of uncharged crimes, violating his right to due process; (2) giving an improper limiting instruction about that evidence; (3) improperly allowing Mills's counsel to prevent Mills from testifying; and (4) improperly adjudicating Mills as a second felony offender.

The Kings County Supreme Court denied the § 440.10 motion on March 23, 2004. The court held that Mills was not denied effective assistance of counsel. Specifically, the court held that: (1) Mills was not precluded from testifying through any act of counsel; (2) Mills's brother's expected testimony was irrelevant and inadmissible, and Mills did not provide an affidavit setting forth what his brother would have testified to; (3) Mills's counsel did challenge the admission of evidentiary material, including witness testimony, as evidenced by the fact that Mills received *Huntley*, *Wade*, *Mapp*, *Dunaway*, *Molineaux*, and *Sandoval* hearings; and (4) the record shows that Mills's counsel did consult him regarding potential plea agreements.[2] The Court also denied Mills's § 440.20 motion to vacate his sentence because Mills was properly adjudicated a second felony offender under N.Y. Penal Law § 70.06. By Decision and Order dated June 23, 2004, the Appellate Division (Prudenti, J.) denied Mills's application for leave to

---

[2]        The Court did not address Mills's due process arguments.

4

appeal.

By *pro se* motion dated July 26, 2004, Mills moved to reinstate and amend his habeas petition. It is not entirely clear from petitioner's papers what claims are being raised in his habeas petition. A liberal reading of the motion in conjunction with his initial petition sets forth the following claims. (1) that the evidence was insufficient to support his conviction of manslaughter; (2) that his trial counsel was ineffective because: (a) he failed to properly object to or rebut evidence of "uncharged crimes;" (b) he did not allow Mills to testify to rebut the "uncharged crimes;" and (c) he failed to object to the trial court's refusal to provide an initial aggressor charge; and (3) that the trial court erred by: (a) admitting evidence of "uncharged crimes;" (b) refusing to provide an "initial aggressor" charge; and (c) improperly excluding evidence concerning the potential effect of alcohol and cocaine on Morgan.

## DISCUSSION

A.      The Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") has narrowed the scope of federal habeas review of state convictions where the state court has adjudicated a petitioner's federal claim on the merits. *See* 28 U.S.C. § 2254(d). Under the AEDPA standard, which applies to habeas petitions filed after AEDPA's enactment in 1996, the reviewing court may grant habeas relief only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The Supreme Court has interpreted the phrase "clearly established Federal law" to mean "the holdings, as opposed to the

dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *see also Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision is an "unreasonable application" of clearly established Supreme Court law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* "In other words, a federal court may grant relief when a state court has misapplied a 'governing legal principle' to 'a set of facts different from those of the case in which the principle was announced.'" *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003)).

Under AEDPA's deferential standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist*, 260 F.3d at 93 (quoting *Williams*, 529 U.S. at 411); *see also Yarborough v. Gentry*, 540 U.S. 1, 5 (2003) (per curiam) ("Where . . . the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable."). Interpreting *Williams*, however, the Second Circuit has added that although "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so

far off the mark as to suggest judicial incompetence." *Gilchrist*, 260 F.3d at 93 (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)).

This standard of review applies whenever the state court has adjudicated the federal claim on the merits, regardless of whether it has alluded to federal law in its decision. As the Second Circuit stated in *Sellan v. Kuhlman*:

> For the purposes of AEDPA deference, a state court "adjudicate[s]" a state prisoner's federal claim on the merits when it (1) disposes of the claim "on the merits," and (2) reduces its disposition to judgment. When a state court does so, a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim – even if the state court does not explicitly refer to either the federal claim or to relevant federal case law.

261 F.3d 303, 312 (2d Cir. 2001). However, if a federal claim has not been adjudicated on the merits, AEDPA deference is not required. *DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005) (citing *Miranda v. Bennett*, 322 F.3d 171, 178 (2d Cir. 2003).

B.    Mills's Claims

1.    The Sufficiency of the Evidence

Mills claims that the evidence was legally insufficient to support the guilty verdict on the first degree manslaughter charge, thus violating his due process rights under the Fourteenth Amendment. I disagree.

A petitioner challenging the sufficiency of the evidence bears "a very heavy burden." *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) (quotation marks omitted); *Einaugler v. Supreme Court of New York*, 109 F.3d 836, 840 (2d Cir. 1997) (quotation marks omitted). A state criminal conviction will be upheld if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319

(1979) (emphasis in original); *see also Ponnapula*, 297 F.3d at 179 ("we review the evidence in

the light most favorable to the State and the applicant is entitled to habeas corpus relief only if no

rational trier of fact could find proof of guilt beyond a reasonable doubt based on the evidence

adduced at trial.").

   In making this assessment, a court may neither "disturb the jury's findings with

respect to the witnesses' credibility," *United States v. Roman*, 870 F.2d 65, 71 (2d Cir. 1989), nor

"make credibility judgments about the testimony presented at petitioner's trial or . . . weigh

conflicting testimony." *Fagon v. Bara*, 717 F. Supp. 976, 979 (E.D.N.Y. 1989) (citing *United

States v. Zabare*, 871 F.2d 282, 286 (2d Cir. 1989)). Thus, under this "rigorous standard," a

"federal habeas court faced with a record of historical facts that supports conflicting inferences

must presume – even if it does not affirmatively appear in the record – that the trier of fact

resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'"

*Wheel v. Robinson*, 34 F.3d 60, 66 (2d Cir. 1994) (quoting *Jackson*, 443 U.S. at 326).

   Mills argues that the evidence against him at trial failed to establish the requisite

intent. Under New York law, a person is guilty of manslaughter in the first degree when he has

the intent to cause serious physical injury to another person and causes that person's death. N.Y.

Penal L. §125.20. Serious physical injury is defined as "physical injury which creates a

substantial risk of death, or which causes death or serious and protracted disfigurement,

protracted impairment of health or protracted loss or impairment of the function of any bodily

organ." N.Y. Penal L. §125.20.  There was no dispute at trial that Mills stabbed Morgan;[3] the sole issue was whether he had the intent to cause serious physical injury.

Mills's theory was that Morgan confronted him in a drug induced rage, struck him in the head with a bottle, and "in a slit [sic] second, [Mills] reached on the floor to retrieve [Morgan's] knife and stab her in a nonfatal area in the back of the leg which ultimately was the cause of death."  Pet.'s Motion to Amend and Reinstate Habeas Petition (Pet.'s Mot. to Amend). Mills contends that evidence concerning his prior physical abuse of Morgan was improperly admitted, and that but for this evidence, the jury would have found either that he did not have the intent to cause serious physical injury or that he was justified in doing so.

This evidence was properly admitted, but even were one to assume that it should not have come in, a rational trier of fact could conclude that Mills intended to cause serious physical injury based solely on the force with which he stabbed Morgan.  Dr. Frede Frederic, who performed the autopsy, testified that the stab wound in the back of Morgan's thigh was seven inches deep, running from the back of the leg to the front, through fatty tissue, muscle, and the femoral artery and vein.  Tr. 192-194.  A rational trier of fact could readily conclude that a person who plunges a steak knife with a four-inch blade into someone's thigh with enough force to make such a wound had the intent to cause serious physical injury as defined under New York law.

---

[3]     Mills made two statements to the police admitting that he had stabbed Morgan, and both statements, one of which was videotaped, were admitted into evidence at trial.  In addition, two witnesses testified to hearing the fight between Mills and Morgan, hearing Mills tell them to call an ambulance, and finding Morgan half underneath the bed, bleeding and unconscious.

In addition to the medical examiner's testimony and the disputed testimony concerning Mills's prior abuse of Morgan, the jury heard testimony from Lorenzo Christie, who shared the basement apartment with Mills and Morgan. Christie testified that prior to stabbing Morgan, Mills and Morgan were in a heated argument. Mills asked Morgan why she came home so late. When Morgan said she was at a girlfriend's house, Mills said that a friend of his told him that Morgan was instead performing a sexual act in order to raise money for rent. According to Christie, Mills said: "If you don't stop lying to me, you know, I'm going to kill you. I'm going to kill you now. I'm going to kill you now." Tr. at 134-35.

In short, the evidence at trial amply supports the jury's finding that Mills intended to cause serious physical injury when he stabbed Morgan. At the very least, the Appellate Division did not unreasonably apply federal law in concluding that the evidence against Mills was legally sufficient. Accordingly, Mills is not entitled to habeas relief on this claim.

2.    <u>Ineffective Assistance of Trial Counsel</u>

Mills contends that his trial counsel was ineffective because he (1) failed to properly object to or rebut evidence of "uncharged crimes;" (2) did not allow Mills to testify; (3) failed to object to the trial court's refusal to provide a "initial aggressor charge;" and (4) failed to discuss a potential plea offer.

The Supreme Court has established the following standard for ineffective assistance claims:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's

> errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Thus, to make out this type of claim, the petitioner must demonstrate both (1) that his attorney's performance "fell below an objective standard of reasonableness," *id.* at 688, and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In assessing the reasonableness of counsel's performance, judicial scrutiny "must be highly deferential," and the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (quotation marks omitted); *Jackson v. Leonardo*, 162 F.3d 81, 85 (2d Cir. 1998); *see also Yarborough v. Gentry*, 540 U.S. 1, 5 (2003) (per curiam) ("[C]ounsel has wide latitude in deciding how best to represent a client . . . .").

In assessing counsel's performance, I "must conduct an objective review . . . measured for 'reasonableness under prevailing professional norms,' which includes a context-dependent consideration of the challenged conduct as seen 'from counsel's perspective at the time.'" *Wiggins v. Smith*, 539 U.S. 510, 523 (2003) (quoting *Strickland*, 466 U.S. at 688-89). The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct" and has instead emphasized that "'the proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Id.* at 521 (quoting *Strickland*, 466

U.S. at 688).

To establish the requisite effect of counsel's performance on the outcome of the proceeding, it is not sufficient if the petitioner shows merely that counsel's errors had "some conceivable effect" on the outcome. *Strickland*, 466 U.S. at 693. Rather, there must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Id.* This determination, unlike the determination whether counsel's performance fell below an objective standard of reasonableness, may be made with the benefit of hindsight. *See Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

a.      Evidence of Other Acts of Abuse

Under federal law, evidence of a person's "other crimes, wrongs, or acts" is not admissible to "prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). Such evidence may be admissible, though, to prove, among other things, motive, intent, and absence of mistake. *Id.*

Prior to trial, a *Molineux* hearing was held to determine what prior act evidence would be admitted. Mills's counsel explained to the trial court that Mills's theory would be that he lacked the intent to cause serious physical injury. Mills's counsel objected to the introduction of various statements that the state sought to introduce, and the trial court, after balancing the prejudicial and probative value of the evidence, allowed some statements in and prohibited others. Tr. at 12 - 27.

Three witnesses testified concerning the prior abuse of Morgan by Mills. Their testimony is what Mills refers to in his petition papers as "uncharged crimes." Curline Barrett, a

12

relative of Morgan's who saw Morgan and Mills several times a week, testified that in the winter of 1998, Mills beat Morgan up on the street, kicking her in the teeth, which resulted in Morgan's teeth falling out. Tr. at 212-13. Barrett further testified that she had heard Mills "often" threaten to kill Morgan. Patrick Brown, Mills and Morgan's apartment-mate, testified that approximately one week before Mills stabbed Morgan, he hit Morgan on the head with a beer bottle and it "burst her head wide open." Brown bandaged the wound. Brown also testified that he heard Mills threaten to kill Morgan "all the time." Tr. at 231. Winston Riley, a grocery store owner, testified that in 1997 he often saw Mills and Morgan arguing. Tr. at 221-23. On cross-examination, Riley stated that he never saw Mills strike Morgan in any way. Tr. at 224-25.

Mills's counsel cross-examined Frederic, the medical examiner, about the extent of any injuries (other than the stab wound) revealed by the autopsy of Morgan. Frederic testified that she saw no injuries on Morgan's body other than the stab wound. Specifically, she saw no black and blue marks, nor evidence of a cut on her head. Tr. at 198-200.

In his summation, Mills's counsel argued that the prior abuse evidence was not credible:

> Now, what do we have with respect to other people and, I submit, gossip-mongers coming in here? He threatened to kill her. I submit. And we're not taking a poll how many here have ever said to anyone in anger, I hope you are dead, I hope you drop dead. To children and wives and husbands and parents, I hope you drop dead.
> We even brought in someone who owned a store who heard them fighting. Well, did you ever see when he hit her? No. No.
> Then a friend came in, and you have to judge everyone's credibility, and I believe this was Patrick Brown that came in . . . . And, oh, yeah, Leo hit her over the head with a bottle and split her head wide open. Wide open.
> I submit, you split your head wide open, you go to the

hospital for some sutures.  Be that as it may, well, I put some
alcohol and some bandages on it.

When did it happen?  A week before the death.  What did
the medical examiner say?  And I specifically asked her, have it
read back, were there any other black and blue marks, black eyes,
scars, abrasions, broken bones?  Was her head damaged.  Were
there any injuries in her head that you saw?

Remember, ladies and gentlemen, use your  common sense.
Knowing it's not going to heal if the head is split open, in a week.

The medical examiner said, Frede Frederics [sic], I did a
complete external examination.  I looked everywhere.  I didn't see
anything on the head nor on anywhere else on the body except that
one stab wound.

What did this guy say?  The head was split open.  It heals in
a week?  Use your common sense.  If it was such a bad wound, you
are not going to have a scab?  In a week?  Or some such evidence
that a medical examiner wouldn't pick up in a careful examination
and an autopsy?  Give me a break.  Give me a break, ladies and
gentlemen, that would have showed up in a second.

Tr. at 322-24.

Mills's theory at trial was that he lacked the requisite intent to cause serious

physical injury.  In that context, evidence of "other crimes, wrongs, or acts" may be admissible

to prove intent (subject, like all relevant evidence, to the weighing of the probative value of the

evidence against the danger of unfair prejudice).  *See* Fed. R. Civ. P. 403, 404(b).  The trial court

did not err by admitting evidence of Mills's prior abuse of Morgan as proof of the disputed issue

of intent, and counsel's objections to the admission of the evidence and attempts to rebut it were

objectively reasonable.

Although Mills's papers are not entirely clear, it appears that his argument is

grounded in counsel's failure to offer the autopsy report into evidence and/or failure to use the

report at the *Molineux* hearing to convince the trial court to exclude the evidence of prior abuse.

Neither contention has merit.  Mills argues that the autopsy report "unequivocally proved that the

alleged injuries the prosecutor intends to admit in the trial did not exist." Pet.'s Mot. to Amend. at 17. Counsel's decision not to seek to have the autopsy report admitted at trial was reasonable. As quoted above, counsel elicited the information that Mills believes disproves the allegations of prior abuse – that an external examination of Morgan's body revealed no other injuries, bruises, or cuts on the scalp. Counsel strongly emphasized this point in his summation. At best, the admission of the autopsy report would have been cumulative. At worst, its graphic description of the cause of death would have supported the state's theory of the case.

To the extent that Mills's counsel may have decided not to use the autopsy report to try and convince the trial court not to admit the challenged testimony, such a decision was also objectively reasonable. The purpose of a pre-trial hearing on whether to admit evidence of other acts is to determine the relevance of the evidence and its probative versus prejudicial value. Despite Mills's belief to the contrary, the autopsy report did not "unequivocally prove" anything, other than that Morgan suffered a seven inch long stab wound in her thigh which severed her femoral artery and caused her death. To the extent that the report may have called into question a particular witness's credibility, that is a question for the factfinder at trial. *See Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996) (assessments of credibility of witnesses are for the jury). As discussed above, counsel made the reasonable choice not to seek to introduce the report at trial, instead attacking the witnesses' credibility through the testimony of the medical examiner. The decision not to offer the autopsy report into evidence trial or use it during the *Molineux* hearing is not grounds for an ineffective assistance of counsel claim.

b.     <u>Testifying on his own behalf</u>

Mills claims that his counsel prevented him from testifying on his own behalf.

Mills believes that had he been able to testify, he could have rebutted the evidence of his prior abuse and further strengthened his justification defense.

The decision whether to testify belongs to the defendant, not his lawyer. *See Brown v. Artuz*, 124 F. 3d 73, 77-78 (2d Cir. 1997). As a threshold matter, the decision that Mills maintain his silence was a very reasonable one. If Mills had testified, the trial court would likely have allowed the state to cross-examine him about his prior drug convictions (Mills was convicted of three prior felonies), perhaps including the facts underlying those convictions. Tr. at 32-33. During the *Sandoval* hearing, the trial court stated:

> If there is evidence in the case put forward by [Mills] that he's merely helping [Morgan] . . . out with crack, if his evidence is that I helped her out when he testifies or through anyone else and then he does take the stand, then you can question about all three convictions, the underlying acts, when the convictions were and what they were for.

Tr. at 32-33. At sentencing, the trial court stated that the reason he sentenced Mills to 22 years instead of the maximum 25 years as urged by the prosecutor was because "[Mills] did not testify and commit perjury and some [sic] of the things that you are saying now." Sentence Tr. at 16.

Mills, of course, had the right to testify, even if doing so would have been prejudicial to his defense. The record, however, belies Mills's contention that his counsel prevented him from testifying. At trial, the following colloquy took place:

> The Court: Is the defendant going to testify?
> Mr. Medows [defense counsel]: No.
> The Court: Okay. All right.
> The Defendant: Your Honor, I'm going to testify.
> (Whereupon, counsel conferred with defendant off the record.)
> Mr. Medows: Your Honor, he's not testifying.
> The Court: After consulting with you, is that correct, sir?
> The Defendant: Pardon me?
> The Court: Is that correct?

> The Defendant: Yeah, whatever he said.
> The Court: No, not whatever he said.
> The Defendant: I never said what you said.
> The Court: No, after consulting with your attorney you decided not
> testify [sic]?
> The Defendant: Yeah, yeah, yeah.  Yes, your Honor.

Tr. at 294-95.

Mills wanted to testify, but his attorney convinced him not to do so.  Perhaps Mills believes now that he should have persisted and taken the stand despite his attorney's advice.  Mills did not persist at trial, however, and counsel cannot properly be characterized as ineffective because he persuaded Mills not to testify.

Although Mills made several other arguments in his § 440.10 motion regarding the ineffectiveness of his trial counsel, it's not clear if he is raising any of those arguments here. In any event, none of them have merit.  Mills claims that his counsel failed to properly apprise him of a potential plea agreement.  This contention is contradicted by the record.  At several junctures, potential plea bargains were discussed on the record.  *See*, *e. g.*, Hearing Tr. at 7 ("The Court: You don't want to take a plea, right?  The Defendant: No your Honor.").  At one point, Mills complained that his counsel was *forcing him* into taking a plea:

> The Court: . . . if you take the plea now, 15 years now definite on
> the man in the first degree.
> . . . .
> The Court: . . . . If you don't want it, that's fair.  You go to trial.
> Whatever you get, that will be fair, too.
> (Defendant consults with counsel.)
> The Court: I'll give you some time to talk to your lawyer.
> Mr. Medows: You don't have to wait five or seven minutes.  I've
> asked him and he said no.  We won't waste anyone's time.
> . . . .
> The Court: Is that correct, sir?  You don't want the plea?
> . . . .
> The Defendant: He is forcing me to take a plea.

17

Mr. Medows: I am not forcing you.
The Court: He didn't force you, because you are not taking it.

Trial Tr. 8-10.

This record establishes that Mills was offered several plea agreements prior to trial and rejected them. In retrospect, he may wish that he plead guilty in exchange for a lesser sentence, but that is not grounds for habeas relief.

Mills also apparently argues that the trial court erred by "failing to give the initial aggressor" charge, and that his counsel was ineffective for failing to object. Mills's claim is unclear, because the trial court *did* give an initial aggressor charge. At trial, the court gave the following instruction, at both counsels' request, as part of the justification charge:

> The first duty of the jury when a defense of self-defense is raised is to determine who was the initial aggressor, the victim or the defendant.
> For the law provides that a person who is the initial aggressor, the one who first uses deadly physical force, may not avail himself of the defense of self-defense. Only the person who uses deadly physical force defensively, that is, in his own defense, is entitled to claim that he was acting in self-defense.

Trial tr. at 381-82.

The court then gave the jury several rules to consider in determining whether a person was the initial aggressor, and concluded by stating: "if the proof satisfies you beyond a reasonable doubt that the defendant was in fact the initial aggressor, then according to the law he was not acting in self defense. . . . On the other hand, if you are satisfied that the defendant was not the initial aggressor, then you must consider [the court's] further instructions on the law of self-defense." Trial Tr. at 383.

In sum, Mills was provided with effective counsel who executed a reasonable trial

strategy. Even if one assumes that Mills's counsel erred in some way, Mills has failed to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. None of Mills's claims – the testimony concerning prior acts of abuse, Mills's failure to testify, or the form of the initial aggressor instruction given to the jury – would likely have led to a different result. At the very least, the state court's finding that Mills received meaningful representation does not reflect an unreasonable application of federal law.

3. Due Process Violations

Mills argues that the trial court violated his due process rights under the Fourteenth Amendment. Although Mills's papers are unclear, he apparently claims that the court erred by: (1) admitting evidence of "uncharged crimes;" (2) refusing to provide an "initial aggressor"charge; and (3) excluding evidence concerning the potential effect of alcohol and cocaine on Morgan. As discussed above, the admission of a defendant's prior acts for the purpose of proving intent does not violate federal law. *See* Fed. R. Evid. 404(b). In addition, the trial court gave the jury a limiting instruction that the evidence may be considered "solely for the purpose of showing the nature of the relationship between the defendant and Miss Morgan, and also to show intent and lack of mistake." Trial tr. at 396.

Mills's complaint regarding the initial aggressor charge has no merit, as such a charge was given and it was a correct statement of the law. Mills's argument about excluding evidence concerning the potential effects of alcohol and cocaine on Morgan is unclear. As the transcript excerpt set forth in the margin demonstrate, defense counsel was able to elicit expert testimony that a synergistic effect can occur if a person ingests cocaine and alcohol, which can

make the person violent.[4]  This was sufficient to make the argument Mills wished to make about

Morgan.

4.      Sentencing

Mills's sentencing claim, which appears to depend on the retroactivity of

*Apprendi v. New Jersey*, 530 U.S. 466 (2000), has no merit because *Apprendi* does not apply to

cases on collateral review.  *See Coleman v. United States*, 329 F.3d 77, 90 (2d Cir. 2003).

---

[4]      Mr. Medows [Defense Counsel]: Doctor, with a reasonable degree of medical certainty, is there literature on the fact that when an individual takes alcohol and cocaine that synogy [sic] of it frequently makes them violent.
Ms. Paisner [Prosecutor]: Objection.
The Court: . . . . Are you qualified to give an answer to that question?
The Witness [Frede Frederic, medical examiner]: I could try and answer that, but I am not qualified.
The Court: All right, sustained.
Mr. Medows: . . . we have a licensed physician sitting here who has dealt with it and I'm going to renew my question most respectfully.
The Court: Could you give an answer with a degree of medical certainty?
The Witness: I would give an answer.
. . . .
The Witness: You do have a synogy [sic] between alcohol and cocaine, but how somebody will act when they take the cocaine and alcohol, I do not know because everybody acts differently.  Some people may take it, they may act violent.  Some people may not act violent.
. . . .
Mr. Medows: With that understanding that you didn't know Miss Morgan, true, but she may have been a peacable person and with a reasonable degree of medical certainty alcohol and cocaine could very well have caused her - -
Ms. Paisner: Objection.
The Court: Sustain.

Tr. 206-208.

<u>CONCLUSION</u>

For the foregoing reasons, the petition is denied.  Because Mills has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue.

So Ordered.


John Gleeson, U.S.D.J.

Dated: May 26, 2005
       Brooklyn, New York